AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

DEC 18 2015

MATTHEW J. DYKMAN
CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.  15mr 843
Room 205 at Ramada Albuquerque Airport, 2300 Yale )
Blvd. SE, Albuquerque, NM 87106 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Room 205 at Ramada Albuquerque Airport, 2300 Yale Blvd. SE, Albuquerque, NM 87106

located in the _____ District of ___New Mexico___ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attached Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2115 | Burglary of a Post Office |
| 18 U.S.C. § 1708 | Theft or receipt of stolen mail matter generally |
| 18 U.S.C. § 1704 | Possession of USPS keys or locks |

The application is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*/s/ Stephanie Herman*
Applicant's signature

S. Herman, United States Postal Inspector
Printed name and title

Sworn to before me and signed in my presence.

Date: 12/11/2015

*/s/ Laura Fashing*
Judge's signature

City and state: Albuquerque, NM

United States Magistrate Judge Laura Fashing
Printed name and title

## AFFIDAVIT

| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | ) | |
| | ) | SS |
| DISTRICT OF NEW MEXICO | ) | |

I, Stephanie Herman, having been duly sworn, hereby depose and state as follows:

1. I am a duly authorized postal inspector with the United States Postal Inspection Service and have been so employed since March 1998. I am currently assigned to the US Postal Inspection Service, Phoenix Division, Albuquerque, New Mexico Domicile.

2. This affidavit is made in support of a search warrant to search room 205 at Ramada Albuquerque Airport, 2300 Yale Blvd. SE, Albuquerque, NM 87106, in connection with an investigation into the burglary of a post office, mail theft and possession of a United States Postal Service (USPS) key in violation of Title 18, United States Code, Sections 2115, 1708 and 1704. This affidavit does not contain all of the information known to your affiant; rather, it contains information necessary to establish probable cause for the violations charged.

3. In November of 2015, postal inspectors in Albuquerque began to investigate reports of break-ins and thefts from parcel lockers and post office boxes in Albuquerque, NM. Inspector Ryan Calvert and I obtained video surveillance from Academy Station, 6255 San Antonio NE, Albuquerque, NM 87109. The video showed a male subject pry open parcel lockers and steal parcels on November 17, 2015. On November 27, 2015, a burglary was reported at Uptown Station, 2505 Graceland Ave. NE, Albuquerque, NM 87110. Surveillance video revealed a male subject enter the workroom floor of the post office on the evening of November 26, 2015 and steal multiple parcels. The male subject appears to be the same individual who stole parcels from Academy Station on November 17, 2015.

4. On December 2, 2015, Inspector Calvert obtained information from First Financial Credit Union (FFCU) regarding one of their members whose debit card was stolen. The debit card was used on November 16, 2015 to deposit two checks which were stolen from two separate post office box holders at Uptown Station. The Debit card transactions took place on November 16, 2015. A representative from FFCU provided Inspector Calvert with surveillance photos from the ATM transactions. The subject in the surveillance photos appears to be the same individual seen in the video from Academy Station and Uptown Station described in paragraph 3. Inspector Calvert and I went back to Uptown Station and reviewed video from the parcel/mail thefts on November 15, 2015 and the same male subject was seen entering the post office and leaving with mail after having gone off camera into the post office box and parcel locker area of the lobby. The male subject was later identified as Ronnie Rael.

5. On December 9, 2015, the representative from FFCU provided Inspector Calvert information regarding mail theft victims who were post office box holders at Foothills Station, 13101 Lomas Blvd. NE, Albuquerque, NM 87123. Inspector

1

Calvert and I went to Foothills Station to determine if the post office boxes had been pried open. When we arrived we found no damage to the boxes. Inspector Calvert and I spoke with the station manager and learned there had been a burglar alarm activation on November 26, 2015 at approximately 12:00pm. The station manager also told us that they believed someone had been entering the post office through the passport window and that parcels and keys, including a US Postal Service arrow key, had been stolen. I contacted the Postal Inspection Service's National Law Enforcement Communications Center (NLECC) and learned that there were also alarm activations on November $9^{th}/10^{th}$, 2015 and November 25, 2015. Inspector Calvert and I reviewed video surveillance and saw two different male subjects enter the post office lobby and then open a roll down screen to enter the workroom floor. The subject in the video from November 26, 2015 appeared to be Ronnie Rael.

6. On December 11, 2015, I contacted the NLECC and requested information on all alarm activations at Foothills Station beginning October 1, 2015 through the present. Alarm activations took place on October 27th and 30th and November 5th, 8th, 10th, 17th, 22nd, and 24th. Inspector Calvert went to Foothills Station to retrieve video from those dates. A subject who appears to be Ronnie Rael is seen entering the workroom floor and leaving with mail on several of those dates. On November 17, 2015, a female subject wearing a black sweatshirt with NMMI on the back, purple leggings and black boots with pink trim waits for him as he enters the workroom floor and then carries out a large tray of mail he gives to her. He is seen leaving with mail/parcels behind her.

7. On December 11, 2015, Inspector Calvert obtained video from Walmart for a declined transaction on November 16, 2015 using the same victim's debit card described in paragraph 4. The video shows Ronnie Rael and a female subject wearing a black hooded sweatshirt with NMMI on the back purchasing black boots with a pink top. Mr. Rael paid cash for the boots since the card was declined.

8. On December 11, 2015 at 3:52pm, a representative from Target notified me that Ronnie Rael and a female subject who was with him were detained by Albuquerque Police at the Target Store at 11120 Lomas Blvd. NE, Albuquerque, NM. Inspector Calvert and I responded to Target and met with APD. The female subject was identified as Venessa Rael, Mr. Rael's mother. She was wearing a black hooded sweatshirt with NMMI on the back, leggings and black boots with pink trim on the top. They were driving a tan 2008 Chevy Monte Carlo with a stolen license plate. Mr. Rael had an outstanding warrant for his arrest. The officer searched Vanessa Rael's purse and found a small amount of suspected methamphetamine, drug paraphernalia, and a wallet with credit cards in names other than Venessa Rael and Ronnie Rael, including a debit card described in paragraphs 4 and 7.

9. Ronnie Rael and Venessa Rael were transported to the police department for interviews. Ms. Rael stated she had never been inside any post office, except to buy stamps. She denied stealing any mail or helping Ronnie steal any mail. She did recognize herself and Ronnie Rael from the transaction at Walmart when the boots were purchased. She stated he bought them for her for her birthday. Ms. Rael admitted that she uses methamphetamine. A more thorough search of

2

Venessa Rael's purse revealed a Raider's lanyard with an US Postal Service arrow key. She stated that the lanyard, the wallet with the credit cards and the methamphetamine was Ronnie's. Ms. Rael stated that she is homeless and is currently staying with her mother. Keys for a Ramada hotel room were located in her purse. She stated she rented a room for Ronnie at the Ramada on Yale in Albuquerque. She stated that the room was in her name.

10. Ronnie Rael stated that the credit cards and methamphetamine in his mother's purse were his. He stated that she was not involved at all. Ronnie Rael admitted to stealing mail from Foothills Station and Uptown Station but denied entering the workroom floor of the post office to steal mail. He stated that a friend named Kayla who looks exactly like him gave him the credit cards in exchange for the use of his car. He stated he found mail in the car after she used it. He stated he stated that she showed him how to steal mail at the post offices. Mr. Rael stated that he always went alone when he went to steal mail.

11. Ronnie Rael stated that he is homeless. Initially he stated he was unemployed and had not worked for a couple of years. He stated that he had been working for a contractor named Aaron for about a month and he had also been distributing flyers in mailboxes soliciting yard work. He stated that he had been living in his car and staying at hotels. He stated he was currently staying at a Ramada, because Aaron paid for a room for him because he was homeless.

12. On December 11, 2015, I contacted a representative from Ramada Albuquerque Airport and he confirmed that Venessa Rael and Ronnie Rael were staying in room 205 and had not checked out. Currently a Postal Inspector is at the Ramada Albuquerque and has confirmed that room 205 is vacant. I request the Court's permission to execute this search warrant after 10:00pm for the preservation of evidence. Hotel rooms are generally accessible to numerous people, to include hotel staff. The execution of this warrant tonight will not cause any undue stress to the renters and will prevent law enforcement from having to wait at the room until after 6:00am on December 12, 2015.

13. Based on my experience and the collective experience of other inspectors and agents who investigate burglary of post offices, mail theft and the possession of USPS keys, I know that individuals involved in this type of criminal activity are usually drug users and they often stay at hotels and motels. I know that people involved in this type of criminal activity often use computers to apply for credit, make purchases, and make counterfeit checks and identification documents. They also use computers and cellular phones to visit Internet sites to obtain and verify victim information. I know that people involved in this type of crime use cell phones to contact criminal associates. I am aware that people involved in mail theft, identity theft and bank fraud keep the following in their residences, hotel rooms and vehicles:

Controlled substances and paraphernalia;
Cellular phones;
Mail that is not addressed to or from Venessa Rael and/or Ronnie Rael;
US Postal Service keys and/or counterfeit keys;
US Postal Service equipment to include tubs, trays, satchels and uniforms;
Checks;

      Credit and/or debit cards;
      Identification documents;
      Receipts from purchases;
      Receipts and membership information from casinos;
      Documents and/or records bearing account information;
      Documents and/or records bearing victim information;
      Documents and/or records of criminal associates including names, addresses phone numbers, e-mail addresses and digital or scanned photos;
      Items used to make counterfeit identification documents and/or checks such as:

          card stock
          check stock
          check making software
          ink
          cellular phones
          digital cameras
          computers
          computer storage devices (hard drives, thumb drives, CDs and/or DVDs)
          software
          printers/scanners/copiers
          signature pads
          laminators

      "Records" refers to written, phone and computer records

14. Based on my knowledge, training and experience, I know that searching and seizing information from computers and cellular phones often requires agents to seize most or all electronic storage devices, along with related peripherals to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is true because of the following:

    a. Technical requirements: Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. In addition, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Because computer evidence is vulnerable to inadvertent or intentional modification or destruction (both from external sources and/or from destructive code imbedded in the system as a "booby trap"), a controlled environment is essential to its complete and accurate analysis.

    b. Forensic copies or backups of computer data need to be restored to a separate computer and verified to insure that files restore or copy properly. Additionally, evidence may be encrypted, password protected, or may be in a format that could result in evidence being overwritten and/or destroyed electronically should an attempt be made to examine the electronic evidence on-site.

    c. Due to the volume and nature of electronic evidence, a seemingly small media storage device can store the equivalent of thousands of pages of

information or more. Examination of this evidence can take weeks or months, depending on the volume of data stored, and it may therefore be impractical to attempt this kind of data search on site.

15. In light of these concerns, I hereby respectfully request the Court's permission to seize any computers, computer hardware, and associated peripherals that are believed to contain some or all of the evidence described in the warrant, and cellular phones and to conduct an off-site search of the hardware for evidence described.

16. The analysis of any electronic media will focus on particular programs, directories, and files (including deleted data) that are most likely to contain the evidence and information of the violations under investigation based upon file names, keyword searches, file dates, or other indicia of relevance. The investigator will make every effort to review and copy only those programs, directories, files, and materials that are instrumentalities and/or evidence of the offenses described herein, and provide only those items to the case agent. However, searching a computer system for evidence may require a range of data analysis techniques because criminals can mislabel or hide files and directories; encode communications to avoid using keywords; attempt to delete files to evade detection; or take steps designed to frustrate law enforcement searches for information. These steps may require analysts to conduct more extensive searches, such as scanning areas of the disk not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant.

17. Based on the information provided in this affidavit, I believe there is probable cause to believe that the items described in paragraph 12 and in Attachment A, are present inside room 205 at Ramada Albuquerque Airport, 2300 Yale Blvd. SE, Albuquerque, NM 87106, and that other items to be seized are fruits, proceeds, evidence and instrumentalities of the criminal activity set out above.

*Stephanie Herman*
Stephanie Herman, Postal Inspector

Subscribed and sworn to before me on this 11th day of December, 2015.

*Laura Fashing*
Laura Fashing, United States Magistrate Judge